May it please the court, my name is Mahesha Subbaraman. It is my privilege to represent plaintiff appellants John Davis, Destiny Thurman, and Kimberly Ewan. This appeal is about administrative law judges or ALJs. The government does not dispute that each of appellants cases was decided by an improperly appointed Social Security ALJ. This appeal thus boils down to whether appellants could challenge this reality for the first time in district court. The answer is yes for two simple reasons. First, both the Supreme Court and the Social Security Administration have recognized that constitutional issues are beyond the agency's power to decide. And second, no statute, regulation, or precedent requires agency exhaustion of constitutional issues in Social Security cases. On the first point, speaking to the law of Social Security actions, as recently as May 2019 in the Smith vs. Berryhill decision, the Supreme Court has emphasized the unique claimant protective status of Social Security litigation. In this regard, the Supreme Court has said that courts must remain sensitive to the differences that mark the Social Security Act and that Congress wanted more oversight by courts in this context, not less. The Supreme Court has thus ruled time and again that constitutional claims may be raised for the first time in district court. Counsel, I've got to tell you, Lucia, and I'm sorry to interrupt you, but you'll be I was sincerely interested in your point. I am guided by the Supreme Court's Lucia case, its most recent case. When the Supreme Court speaks, I try to follow it. The Supreme Court says, one who makes a timely challenge to the constitutional validity of the appointment of officer who adjudicates his entitled relief. So the key words timely, then they go ahead and define timely in the next two or three sentences by saying Lucia made a timely challenge, the person there, by contesting it before the commission, the Securities Exchange Commission. So doesn't that pretty much indicate that we should say it's got to be brought up sometime, as you know Social Security has several layers, sometime before Social Security? I don't believe so, Your Honor, and allow me to address Lucia up front. In Lucia, as you pointed out, the court said the claim was timely because it was raised to the board. Now here, we don't have the board, we have the Social Security Commissioner, but we have this four-layer process. It's interesting to note that in Lucia, the claim was never raised to the ALJ in that case. It was raised for the first time to the board. What board? So this would be the Board of Commissioners presiding over the Social Security, the Securities and Exchange Commission. The SEC, right? That's right. I don't think it's a board, it's a commission. Whether we call it a commission or a board, the Board of Commissioners... It's the SEC, go ahead. That's correct, Your Honor. Anyway, it was raised in the agencies, not in the federal court for the first time. That's correct, Your Honor, and then that leads to the second important distinction, which is that in the Securities and Exchange laws, there is an explicit congressional requirement of agency exhaustion. It says that no court may consider any issue not raised to the board. That does not exist under any statute, regulation, or precedent that applies to Social Security litigation. If such a statute did exist, then that would contravene numerous Supreme Court precedents that have allowed constitutional issues to be litigated, even though there was no ALJ hearing that took place in those cases. And for good examples of that, I encourage the court to look at Weinberger v. Salfi, Matthews v. Eldridge, and Califano v. Sanders. In the Salfi case, the court said an ALJ hearing would be futile and wasteful once the Secretary has determined that the only issue to be resolved is a matter of constitutional law conceitedly beyond his competence to decide. In Matthews v. Eldridge, the court, in a footnote, said if Eldridge had exhausted the full set of available administrative review procedures, failure to have raised his constitutional claim that is before the agency would not bar him from later asserting it in a district court. And then in Califano, the Supreme Court affirms that it is authorized judicial review notwithstanding the absence of a prior 405B hearing where the claimants challenged the decision on constitutional grounds. And the reason the court gave for that is because constitutional questions obviously are unsuited to resolution in administrative hearing procedures. And by the way, you don't have to take my word for it or even those cases' word for it, take the Social Security Administration's word for it. They issued two emergency messages in June 2018 and June 2018. And in both of those messages, they told ALJs, you cannot decide these claims. And in each message, they said, quote, challenges of the constitutionality of the appointment of SSA's ALJs are outside the purview of the administrative adjudication. So take the agency's own word on this. Well, but does the agency's words apply to your case in terms of when your cases were in the, at the Commission? Well, I would submit, Your Honor, that the emergency messages are a reflection of the law that existed preceding when those messages were promulgated. Your cases were before that. Yes, they were before the messages, but the messages were simply enumerating what all of those Supreme Court cases that I just mentioned a moment ago have already said. Well, if the, if 100,000 people had raised a constitutional claim in the agency back at that time when your clients were there, would the agency say, I'm going to ratify all these appointments and eliminate these claims? I don't believe so, Your Honor, and here's the reason why. It's a little bit complicated, but I'll try to walk the court through it. The problem that existed with respect to the Social Security ALJs and other agency ALJs was not just a question of agency staff appointing these judges. It was also a problem of these appointments being subject to another government department's review, the Office of Personnel Management. Under the statutes, they essentially had control over how these ALJs were being picked, and they gave agencies a select number of choices, and they said, you can choose from these choices, you can't choose from anything else. That was a problem. The ALJs were part of the competitive service, and the Office of Personnel Management controlled that process completely. It wasn't until July 10th, 2018, when the president exempted ALJs from the competitive service, as a federal statute allows him to do, that it then became possible for the Commissioner of Social Security to ratify the appointments as the Commissioner. I understand that, but if 100,000 people had filed these claims, couldn't the Commissioner have gone to the president and said, we need an exemption here so that I can ratify these appointments? It's entirely possible that could have happened, but I don't think it's the fault of the litigants or the Social Security claimants as to whether or not the Commissioner felt like he was going to do that or not. Doesn't the L.A. Tucker case say that's one reason for this kind of exhaustion requirement, that it puts the agency on notice of the risk of Well, I think that then speaks to the unique nature of Social Security litigation, and I would point the Court to something that the Supreme Court said in Matthews v. Eldridge, which I think bears directly on the observation that you're making, Judge Colleton. The Court in Eldridge said, quote, it is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single-aid recipient raising a constitutional challenge in an adjudicatory context. The Secretary would not be required even to consider a constitutional challenge. Now, I understand your point. If 100,000 claimants are coming and saying we want to raise these claims, maybe that might change the equation, but then look at the Social Security Administration emergency messages. In those messages, they were anticipating that these claims might be made, and they weren't saying, well, we better ratify these appointments. They were telling their ALJs, don't rule on these claims, don't do anything with them. That's the judgment they made in this particular case, but we're talking about what the rule of law should be on whether they're given the opportunity to make that judgment. Sure, and I think the rule of law has already been set by the Supreme Court in cases like Weinberger and Matthews and Califano, and what the Court has said, consistency in all of those cases, which implicated broad constitutional issues affecting many different Social Security claimants, is that those claimants, and I believe Weinberger was a class-action lawsuit, those claimants were not required to exhaust their claims before the agency, before raising them in district court, and I think... Is it one litmus test whether the agency can change it or not? Yes, it is, Your Honor, and... Okay, here the Commissioner can change it because I think in July 2018, the Commissioner did, right? Not exactly, Your Honor. After the President. After the President, specifically, would have to be the one to change it because the President has allocated the authority to remove or make exemptions to the competitive service under the federal statutes. That's true, Your Honor, but that raises some other problems in terms of the fact that for a significant period of time, you had an Acting Commissioner. For a period of time, that Acting Commissioner's powers... There's no Appointments Clause issue in this case, right? We're not challenging the Commissioner's appointment. We're just talking about the ALJ's appointment, but speaking to the notion of what the Commissioner could do vis-a-vis the President, there are other complicating factors involved here, and I appreciate that the point that the Court is trying to get at, but I think the bottom line question is, what can Social Security claimants, under a Claimant Protective Statute, what's their reasonable expectations? And what the Supreme Court has said over and over and over again is that under this Claimant Protective Statute, Social Security claim... Go ahead. All I want to say is, goodness gracious, we're a circuit that says they have to exhaust claims all the time, so you've got to help me on that. Sure, I'd be happy to, and I believe you might be referring to the Anderson v. Barnhart case, which the government relies on. There are five or six. Sure, so let's start with RELCO, which is the NLRB case. In that case, once you're talking about adversarial litigation, the interests in administrative exhaustion are at their highest, because you have two sides fighting it out, and you need to put the other side on fair notice. But Social Security litigation is non-adversarial. It's inquisitorial. It's meant to provide as much of a benefit of the doubt to the claimant as possible, and that's a very different situation than what you see in RELCO. And then speaking to kind of cases like Anderson v. Barnhart, in those cases what the Court was dealing with is a type of objection that can be made to ALJ decisions, and the objection is one where you're essentially saying that the ALJ decision is wrong because the ALJ failed to develop the record in a particular way. And under the facts of that case, the Court said, well, you didn't raise it at the hearing, you didn't raise it in your benefits application in terms of this basis for disability, therefore we're going to find that the ALJ didn't have a duty to develop it sua sponte. But, and this is the key thing, in later cases the Supreme Court, I'm sorry, this Court, in cases like Mauser, said there's no bright-line rule that attaches to that principle. You have to take it on a case-by-case basis, and there may be circumstances where an ALJ has to step in and develop a claim that the Social Security claimant has not raised to the agency. So that nuance then, I think, points to the broader picture that we're dealing with here. This is Social Security litigation. This isn't an adversarial proceeding. It's meant to be inquisitorial. It's meant to be claimant-friendly. And while I appreciate kind of the Court's concern that you do want issues to be raised, I think there's another way of looking at this, and that is if you impose an issue exhaustion rule, you're going to be stripping these claimant-friendly procedures from hundreds of thousands of cases going forward. These are going to become trials to the extent constitutional issues are in play, and that's going to cause a lot more problems and a lot more headaches for ALJs, the Appeals Council, in this process. And I don't think that forsaking, say, the hundred or so cases that might in theory raise an Appointments Clause claim to create that problem going forward makes a lot of sense. So I think that the problem would be, you would be turning ALJ proceedings into trials if you impose an issue exhaustion requirement on constitutional claims going forward. Say one of your clients had raised an Appointments Clause claim before the ALJ, how would it have changed it to a trial? Well, it would change it to a trial in the sense that the agency exhaustion is not meant to be a futile gesture. It's meant to serve a purpose. And so the ALJ would be required to decide the claim. Now keep in mind, these are non-adversarial proceedings where the government doesn't have a lawyer at the table arguing that a law is constitutional or that a policy is constitutional. So the ALJ would be deciding constitutional claims in a non-adversarial proceeding under claimant-friendly procedures, turning it into a trial. That's completely incompatible with what Social Security litigation is supposed to be. It might be a decision, Your Honor, but it's also not a decision that's consistent with the jurisdiction that Social Security ALJs exercise under the statute. If you look at 42 U.S.C. 406b, which is what gives ALJs their jurisdiction, it says quite simply that when the commissioner makes a disability of determination, that the ALJs, based on evidence adduced at a hearing, can affirm, modify, or reverse that disability determination. It says nothing about deciding constitutional issues. And with that, I see I've run well into my rebuttal time and I'd like to reserve, if I can, what little time I have. I had a question about what you said on Matthews against Eldridge and Weinberg against Salfi. Does it matter, do you think, that the discussion there about constitutional claims came in the context of whether 405g precluded jurisdiction? I don't think it. As opposed to a non-jurisdictional exhaustion rule? I don't think so, Your Honor, and part of the reason I don't think it matters is because in Califano, the court cites both Matthews and Weinberger in expressing this general principle that the constitutional claims in those cases were allowed to proceed for the first time in district court because the agency has no authority to decide those types of claims. Okay, thank you for your argument. Thank you, Your Honor. Mr. Aguilar, we'll hear from you. May it please the court, Daniel Aguilar for the Commissioner of Social Security. Plaintiffs did not raise any appointments clause claim during their administrative proceedings. The district court held that claim forfeited in plaintiff's appeal. Plaintiffs have three primary arguments. First, forfeiture does not apply to SSA proceedings at all. Second, constitutional claims are not subject to forfeiture, and third, that their forfeiture should be excused as a matter of discretion. None of those claims have merit. First, as this court recognized in Anderson v. Barnhart, which is consistent with three other circuits, claims that were never raised during SSA proceedings are forfeited. Second, as this court held in Relco Locomotives, appointments clause claims can be forfeited when they are not raised during administrative proceedings. Relco had a specific statute though, right? That's correct, Your Honor. Doesn't that make Relco, you've got it completely out of context? I don't think so. I think it makes Relco definitely an easier case. There's a statute there that codifies forfeiture, but I think what the Supreme Court explained in Ellie Tucker Truck Lines, it's at the beginning of its discussion of forfeiture, and it's in footnotes five and six, I believe, the court begins the discussion with, as we've recognized in a few, more than a few cases, and as Congress has identified, has codified in more than a few statutes, there's a background principle of forfeiture. And at footnote six in Ellie Tucker, the Supreme Court explicitly cites the SEC statute, 78Y, and says like this is a codification of the common law doctrine of forfeiture. And that's why in Lucia, the Supreme Court said this has to be a timely raised claim, and it says it's timely because you raised it before the Commission. And that's because of that same statute, 15 U.S.C. 78Y, which codifies common law principles of forfeiture, which the Supreme Court explained in Ellie Tucker, it's the usual rule that we don't go around toppling over agency decisions unless there's been an objection before the agency according to its practice and rules that allows it an opportunity to consider the claim. And so that's what's present here, is that the SSA needs an opportunity to consider this kind of claim. And just going to the law power of the Commissioners, understood opposing counsel to suggest that the Commissioner didn't have power to appoint ALJs. That's in 5 U.S.C. 3105. That's a statute that allows the head of any agency to appoint ALJs. That's a congressional statute that allows the appointment of inferior officers by the head of a department. So clearly the Commissioner of SSA does have both constitutional and statutory authority to appoint ALJs. No, I think he was saying unless the President exempted the people from this I didn't understand that to be a separate claim that they were raising, but if even if that is a separate claim, the Supreme Court's recognized, at least in one case that I know of, it's not cited in briefing because we didn't understand this to be a separate claim that they're raising, but just to help the Court, there's a 19th century case called United States v. Hartwell, where it allows the assistant Treasury clerk at Boston to appoint a clerk of the Treasury there with the approbation of a secretary. And the Supreme Court said that's a proper appointment under the Appointments Clause. So the fact that you might have two decision-makers involved in an otherwise proper appointment of an officer doesn't somehow infect that decision-making process to make it an improper appointment. So the fact that OPM has some role in administering the list of eligibles, I don't understand that to be a separate claim, but even if it was, you know, it's at a minimum that you would have to consider that against the backdrop of the Hartwell case. But clearly here what happened is that the appointed by the Commissioner, we're not contesting the merits of the Appointments Clause challenge here, but what we are saying is the Commissioner and the agency as a whole ought to have had an opportunity to consider the claims in your case in order to, in order to evaluate this, decide whether to grant your remedy, or as Ellie Tucker noted, at least put you on the notice of the risk of wholesale reversal. And in footnote 7 of Ellie Tucker, what the Supreme Court noted was in that case, the Interstate Commerce Commission, I indicated 5,000 cases, which would all be vulnerable to attack if we didn't adhere to the normal rules of forfeiture. Here the stakes are considerably higher. There are hundreds of thousands of cases that are decided every year by ALJs and the Social Security's Appeals Council. What claimants, what the plaintiffs here want is a rule, categorical rule, at the outset that forfeiture just doesn't apply at all to SSA proceedings, or even I guess the more narrow rule, their more which were never raised before the agency, their forfeiture should be excused. That affects hundreds of thousands of cases, and the remedy that they want is remand to the agency for a redo. Now that works to the detriment of all claimants who are currently awaiting their first ALJ hearing, and there are hundreds of thousands of them. Is that a sort of parade of horribles argument? I don't think it's a parade of horribles, Your Honor, as we've seen hundreds of these claims raised across the country already. If a court of appeals were to countenance this and say, you're right, you never had to raise this before the agency, you can raise it for the first time in district court, we would see everyone who falls into that category essentially running a copy-paste version of this argument, saying there was an Appointments Clause claim, when courts excuse it, you should excuse it as well. And as that gains traction, I don't think it's a hypothetical parade of horribles, I think that is the inevitable consequence of this. Now obviously, we would still try to preserve some arguments to limit that, but I mean that is why we consider this to be a really important issue, both for adhering to normal rules of forfeiture, but also just to ensuring that, as the Supreme Court noted, that the SSA adjudicatory system continues to work fair and work to the benefit of those claimants who have not yet received a first hearing and may have meritorious disability claims. And to the extent that the plaintiffs here are arguing that it was futile, I mean we can go into the merits of that too. I don't think that's correct, but I'd also note that they didn't raise an Appointments Clause claim when they came to district court. It wasn't in their complaint. And obviously the district court had authority to rule on that claim. It was only after they had received an adverse determination from a magistrate judge, and after the Supreme Court had ruled on this issue with respect to the SEC ALJ system. How is this relevant? I think it just goes to show that, to the extent that they're arguing that their forfeiture should be excused because it was a matter of futility, it's indicating that, well, I don't really think futility what was driving you not to raise this And to the extent that you're worrying about futility before the agency, I don't think that's appropriate either. The commissioner, as we've said, clearly has the authority to appoint these ALJs. And to the extent that claimants were actually raising this claim before the agency, the SSA was tracking it and seeing how many Lucia claims do we actually have. At the time that plaintiffs' claims were going on, I'm not aware of anybody having raised an Appointments Clause challenge to the agency in agency proceedings. And that's not to say that it tried to sue in district court raising this argument. And that wasn't jurisdictionally proper for a variety of reasons. But it's not like the claim was unavailable. It could be made. And the agency had the power to correct it. And I think that's what the futility analysis goes to and why it doesn't apply here. What about Matthews and Salfi and Califano against Saunders? All of those are jurisdictional cases. It's whether or not the suit in district court is proper under 42 U.S.C. 405 G. Right? All of those were what cases? Speak a little more slowly if you could. I apologize, Your Honor. All of those were jurisdictional cases under 42 U.S.C. 405 G about whether or not you could come to district court in the first instance without having gone through every level of administrative review at SSA. And so we don't think those are applicable for that reason. To the extent that you think a case discussing jurisdiction is applicable, we think that the most on-point case for this is the more recent decision by the Supreme Court in Elgin versus Department of Treasury. And there that was a case where some people had been fired from federal employment because they didn't register for the draft. And they... So you say the other Matthews and so forth are 405 G cases, whereas this is what? Well, so those are cases about whether the district court has jurisdiction. Here everybody agrees that the district court has jurisdiction. The question is, when you never raised a claim to the agency, can you raise that claim for the first time in district court? And you're saying that didn't come up in those three cases? I don't... As I understand it, Your Honor, those were cases just about jurisdiction. There's a footnote in Matthews versus Eldridge that says, essentially, as an aside, well, we think that even if you were to raise a constitutional claim after going through this entire process, the district court could consider it, even if you never did it before the agency. That's why I think Elgin, the later decision comes in. What do you think that footnote means? Well, I think that means, as dicta, that the court says, well, maybe this could be confronted with that issue in Elgin. They said, no, we take that back. We don't think that's appropriate. Because in Elgin, it was a facial constitutional challenge to the Selective Service statute. The plaintiffs argued, well, that violates equal protection. You only force men to register for the draft, not women. So we should be allowed to assume district court and bypass the agency's process because we have a constitutional claim that the Merit Systems Protection Board can't consider. What the Supreme Court said is, we will assume that the Nevertheless, you have to go through those administrative proceedings and raise and preserve that claim for judicial review. Because the agency can decide other things that are related to you, you can receive meaningful judicial review. It analyzed it under a jurisdictional framework, under a previous Supreme Court case called Thunder Basin. So to the extent that you think, Matthew says, any relevance at all, we think that's been overtaken by the Supreme Court's later decision in Elgin. And just to the extent that they said- What if we don't think Elgin's really on point with what Matthew's was saying? Well, if you don't think that Elgin's on point, and you think that there is some sort of, I guess, categorical reason why constitutional claims don't have to be preserved in agency proceedings, I think that then runs into Ralco Locomotives. And the other court's decisions, considering constitutional claims that were never raised in agency proceedings. We sent in a 28-J letter about the Supreme Court's recent decision in Maloof versus SEC, which similarly had an appointments clause claim which was never raised before the agency. And both in Ralco Locomotives and in Maloof, what the court said is that this is a kind of claim that you need to preserve for judicial review. You have to raise it before the agency. And when you don't do that, then it's not properly before the court. Maybe there are some extraordinary circumstances that make something a really rare case where we might want to decide to use our discretion to excuse haven't identified anything about their cases that's particularly rare. What they've said is that we had cases that were adjudicated by an ALJ, not appointed by the Commissioner. Therefore, you should excuse forfeiture. And that clearly isn't a rare case that applies to every proceeding that was pending before July 16th, I think it was, 2018, when the Commissioner ratified the appointments of all of the ALJs. So that's not a rare case. It's a categorical rule that affects hundreds of thousands of claimants to the detriment of people who And for all of those reasons, we think that the district court correctly determined that the normal rules of forfeiture apply here, as this court held in Anderson v. Barnhart, that there's not a categorical limitation on not raising constitutional claims, as this court held in Alco Locomotives, and that there's nothing about their case that warrants an exercise of discretion to excuse their forfeiture. I'm happy to answer any other questions that the panel has. Very well. Thank you for your argument. Thank you, Your Honor. Mr. Subbaraman, we'll allow a brief rebuttal for a couple minutes, if you'd like. Judge, wait, excuse me, should I give him coffee? Two minutes would be fine, sure. I'm very grateful to the court. I'm going to just make two very simple points up front. First, the government wants to play a mix and match with statutes. And talking about L.A. Tucker, and talking about Elgin, and talking about Relco, those are different statutory schemes. They're not Social Security litigation. And you can't mix and match statutes. In Smith v. Berryhill, the court makes absolutely clear that courts have to be solicitous to the unique claimant-protective nature of Social Security litigation and the Social Security Act. And so the government, by trying to import all of these standards from these other statutes into Social Security litigation, is actually risking creating more problems. The very problems it parades in front of the court as a horrible here, rather than solving problems. But then, going to the government's other point, which is this parade of horrible, there are hundreds of thousands of cases that will have to be redone if you find that there's no forfeiture rule here. That's not true. We're not advocating a blanket rule. We're essentially working within the system as exists. And as we see it, there's a six-step gauntlet that any case to have a meritorious Appointments Clause claim here is going to have to pass through. One, you have to have an ALJ decision before the ratification on July 16, 2018. Second, you've got to have an adverse ALJ decision. And not all ALJ decisions are adverse. Third, you have to have a timely appeal to the Appeals Council. Fourth, you have to have a timely appeal to the District Court. Counsel, you could raise that to Edna Sims. You could raise it to the Appeal Council. You wouldn't have to raise it to the ALJ, right? That's correct, Your Honor. Go ahead with your step. So you'd have to timely appeal to the District Court. Fifth, the claim in front of the District Court, if they win on the merits, then there's no need to talk about the Appointments Clause because it's going back to the agency anyway. And then sixth, you have to have an asserted Appointments Clause claim. And not all of these cases do. And if you look at the numbers that the Social Security Administration posts on their website for some of these ALJ decisions, I mean, one of the ALJs in these cases, Judge Sandboth, 101 denials over a period between 2017 and 2018. You run through that six-step gauntlet and the national averages in terms of going through those six steps, and it ultimately boils down to kind of maybe one or two cases that would fit the ultimate metric. So I submit to the Court, there is no parade of horribles here and that the real problem is importing other statutory regimes into the Social Security Act, which is meant to be protective of claimants' rights. Thank you, Your Honor. My only response to that, easy for you to say, Counsel, easy for you to say. We have to live with the consequences of our mistake. I appreciate it. Your Honor, if I may briefly respond to that? Please. Judge Wolman, I think that's a good point. But I think the Supreme Court spoke to it directly in the Sims case. Because what it said in Sims is that if Social Security wanted to pass an issue exhaustion rule, it probably could do so. And yet in the 19 years since Sims was decided, and I didn't hear my opponent argue, it has not passed an issue exhaustion rule. So if there is a problem here, it's a problem to a certain extent of the agency's own creation, and they have to live with that. Well, that was an exhaustion rule at the Appeals Council level, not with the ALJ. Well, the Court was looking more broadly to the entire process, and it categorically said there is no, as we can find it in the regulations, an issue exhaustion rule. No, but they said they weren't addressing the ALJ. That's absolutely correct, Your Honor. But they couldn't find a regulation on the point, and they said if Social Security wanted to pass one, it probably could. It hasn't. So I don't think we should be faulted for their oversight. Very well. Thank you for your argument. Thank you, Your Honor.